IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| DENNIS BLACKSTOCK, *Plaintiff,* | § § § | |
| v. | § § | CIVIL ACTION NO. 4:25-CV-80 |
| JOSEPH OPEOLA and TALLAN METCALF, *Defendant(s).* | § § § § § | |

### DEFENDANTS JOSEPH OPEOLA AND TALLAN METCALF'S MOTION TO DISMISS

Defendants Joseph Opeola ("Opeola") and Tallan Metcalf ("Metcalf"), (collectively, "Defendants"), by and through the Office of the Attorney General, file this motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). In support, Defendants respectfully offer the following:

### STATEMENT OF THE CASE

Plaintiff Dennis Blackstock ("Plaintiff") is an inmate currently incarcerated in the Texas Department of Criminal Justice ("TDCJ"). He brought suit, presumably under 42 U.S.C. § 1983, alleging that Opeola "rolled cell doors without wing boss to check for obstacles in bars." ECF No. 1 at 3. Plaintiff alleges that this resulted in part of his toe being "amputated" *Id.* Additionally, Plaintiff also alleges that Assistant Warden, Metcalf "fail[ed] to have all officers properly trained in all areas." *Id.* Plaintiff does not specify what type of claim he is bringing, presumably, this is interpreted as being an Eighth Amendment conditions of confinement claim and a failure-to-train claim. Plaintiff does not to specify in which capacity he sues Defendants.

Plaintiff alleges that on August 20, 2023, he was in his cell when the doors were rolled open without a "wing boss on the run." ECF No. 1 at 4. Plaintiff alleges that this "failure to adhere to all

1

aspects of standard operating procedures" constitutes a "dereliction of responsibility" leading to part of his left large toe being "amputated". *Id.*

Plaintiff seeks an unspecified amount of nominal and punitive damages. As described herein, Plaintiff's conclusory allegations are insufficient to state a viable claim.

## STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) permits a party to move for dismissal when an opposing party fails to state a claim upon which relief may be granted. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also City of Clinton v. Pilgrim's Pride Corp.*, 632 F.3d 148, 152-53 (5th Cir. 2010). "[F]acial plausibility" exists "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. 662 at 678 (citing *Twombly*, 550 U.S. at 556). Thus, while the complaint need not contain "detailed factual allegations," it must go beyond mere "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.

## ARGUMENTS AND AUTHORITIES

### I. Plaintiff fails to allege the personal involvement of Defendant Metcalf.

"Personal involvement is an essential element of a civil rights cause of action." *Thompson v. Steele*, 709 F.2d 381, 382 (5th Cir. 1983); *see also Rizzo v. Goode*, 423 U.S. 362, 371-72 (1976) (holding that there must be an affirmative link between injury and conduct of defendant). Thus, "[u]nder section 1983, supervisory officials are not liable for the actions of subordinates on any theory of vicarious liability." *Thompkins v. Belt*, 828 F.2d 298, 303 (5th Cir. 1987); *see also Iqbal*, 556 U.S. at 663 ("Because vicarious liability is inapplicable to... [section] 1983 suits, the plaintiff in a suit such as the present one must plead that each Government-official defendant, through his own individual actions,

2

has violated the Constitution." (citation omitted). The only exception is that "supervisory liability exists even without overt personal involvement if supervisory officials implement a policy so deficient that the policy "itself is a repudiation of constitutional rights" and is '"the moving force of the constitutional violation'" (quoting *Grandstaff v. City of Borger*, 767 F.2d 161, 169, 170 (5th Cir. 1985)). This exception is not relevant here as the implementation of a deficient policy is not in question.

Plaintiff does not allege the personal involvement of Metcalf in the alleged physical incident. ECF No. 1 at 3. Instead, Plaintiff alleges that Metcalf, Assistant Warden, "[f]ail[ed]to have all officers trained in all areas." This vague and conclusory allegation is insufficient to state a claim against Metcalf. *See Iqbal*, 556 U.S. at 662 (holding that plaintiffs are required to plead "more than an unadorned [ ] accusation. . . that is devoid of 'further factual' support) (quoting *Twombly*, 550 U.S. at 555)); *Sias v. Louisiana*, 146 F. App'x 719, 720 (5th Cir. 2005) (holding that vague and conclusory allegations provide an insufficient basis for stating a Section 1983 claim).

Additionally, in the "Statement of Claim" section of Plaintiff's complaint, Plaintiff was instructed to state plainly the facts of his case including what happened and who was involved. *Id.* at 4. Plaintiff does not mention Metcalf or alleged his personal involvement in the incident. *Id.* In fact, Plaintiff ends that same "Statement of Claim" section by stating that "[o]fficer Opeola is directly responsible for the damage incurred to [him]."

Because Plaintiff has not plead the personal involvement of Metcalf and has instead plead a one sentence vague and conclusory allegation against Metcalf, all claims against Metcalf should be dismissed.

## II. Defendants are entitled to qualified immunity.

To the extent that Plaintiff sues Defendants in their individual capacity, Defendants are protected by the doctrine of qualified immunity. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1983). "The doctrine of qualified immunity shields public officials like the [Defendants] from damages actions

unless their conduct was unreasonable in light of clearly established law." *Elder v. Holloway*, 510 U.S. 510, 512 (1994).

Qualified immunity balances two important interests: the need to hold public officials accountable when they exercise power irresponsibly, and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably. "[O]fficials who reasonably but mistakenly commit a constitutional violation are entitled to immunity." *Bazan v. Hidalgo Cty.*, 246 F.3d 481, 488 (5th Cir. 2001). "When properly applied, [qualified immunity] protects all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986).

It is Plaintiff's burden to overcome Defendants' entitlement to qualified immunity. *Salas v. Carpenter,* 980 F.2d 299, 304 (5th Cir. 1992); *Elliott v. Perez*, 751 F.2d 1472, 1476–79 (5th Cir. 1985). "[T]he first inquiry must be whether a constitutional right would have been violated on the facts alleged." *Saucier v. Katz*, 533 U.S. 194, 201 (2001). "[I]f a violation could be made out on a favorable view of the parties' submissions, the next sequential step is to ask whether the right was clearly established." *Id.* "Ultimately, a state actor is entitled to qualified immunity if his or her conduct was objectively reasonable in light of the legal rules that were clearly established at the time of his or her actions." *Wilson v. Layne*, 526 U.S. 603, 614 (1999). The Supreme Court has held that the sequence of the steps is not mandatory. *Pearson v. Callahan*, 555 U.S. 223, 236–37 (2009).

### A. Plaintiff does not state a constitutional violation.

Plaintiff fails to state what claims he is bringing against Defendants. Construed liberally, Plaintiff is attempting to bring an Eighth Amendment conditions-of-confinement claim against Opeola and a failure-to-train claim against Metcalf. He fails to state either, as discussed below.

### i. Plaintiff does not state an Eighth Amendment conditions-of-confinement claim.

It is well-settled that "the Constitution does not mandate comfortable prisons," and that prison conditions may be "restrictive and even harsh" without running afoul of the Eighth Amendment. *Hernandez v. Velasquez*, 522 F.3d 556, 560 (5th Cir. 2008) (quoting *Rhodes v. Chapman* 452 U.S. 337, 347 (1981)). Prison conditions only constitute cruel and unusual punishment if they involve the "wanton and unnecessary infliction of pain" or if they are "grossly disproportionate to the severity of the crime warranting imprisonment." *Rhodes*, 452 U.S. at 347.

A prisoner must satisfy a two-part test, consisting of an objective and a subjective component, to state an Eighth Amendment conditions-of-confinement claim. *See Davis v. Scott*, 157 F.3d 1003, 1006 (5th Cir. 1998). First, under the objective component, a prisoner must allege the existence of conditions "so serious as to deprive prisoners of the minimal measure of life's necessities, as when it denies the prisoner some basic human need." *Harper v. Showers*, 174 F.3d 716, 720 (5th Cir. 1999). The alleged conditions must be "extreme." *Hudson v. McMillian*, 503 U.S. 1, 9 (1992). While a prisoner "need not await a tragic event" before seeking relief, he must at the very least show that a condition of his confinement "pose[s] an unreasonable risk of serious damage to his future health." *Helling v. McKinney*, 509 U.S. 25, 33-35 (1993). Prison conditions are not unconstitutional simply because they are restrictive; restrictive conditions "are part of the penalty that criminal offenders pay for their offenses against society." *Rhodes*, 452 U.S. at 347. Plaintiff's complaint makes no mention of extreme conditions of confinement or a deprivation of life's necessities. As such, an Eighth Amendment conditions-of-confinement claim is inappropriate. His complaint simply recounts an allegation of a lone incident resulting in an injury, due to failure to adhere to prison policies. ECF No. 1 at 4. This sounds in negligence, not constitutional violation. This is further shown by Plaintiff's use of the phrase "dereliction of responsibility", which is taken to mean a breach of duty, when discussing Defendant Opeola's alleged failure to follow procedure. *Id.*

Second, under the subjective component, a prisoner must establish "that the responsible prison officials acted with deliberate indifference to his conditions of confinement." *Harper*, 174 F.3d at 720. To satisfy this component, a prisoner must allege facts indicating that the prison official "(1) was 'aware of facts from which the inference could be drawn that a substantial risk of serious harm exists'; (2) subjectively 'drew the inference' that the risk existed; and (3) disregarded the risk." *Cleveland v. Bell*, 938 F.3d 672, 676 (5th Cir. 2019) (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)). Deliberate indifference is "an extremely high standard to meet." *Domino v. TDCJ*, 239 F.3d 752, 756 (5th Cir. 2001). Actions and decisions by officials that are merely inept, erroneous, ineffective, or *negligent* do not amount to deliberate indifference. *See Hernandez ex rel. Hernandez v. Texas Dep't of Prot. & Reg. Serv.*, 380 F.3d 872, 883 (5th Cir. 2004) (emphasis added). Moreover, because the concept of *respondeat superior* does not apply to claims brought under Section 1983, a plaintiff cannot successfully plead deliberate indifference without alleging personal involvement in the constitutional violation by each named defendant. *See Thompson v. Steele,* 709 F.2d 381, 382 (5th Cir. 1983); *Williams v. Luna*, 909 F.2d 121, 123 (5th Cir. 1990); *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 691–93 (1978).

Plaintiff pleads zero facts indicating that either Defendant was aware of facts which the inference could be drawn that a substantial risk of serious harm existed. Further, Plaintiff fails to allege facts showing that Defendants subjectively drew the inference that the risk existed, or that Defendants disregarded the risk. Plaintiffs' conclusory allegations fail to satisfy either the objective or the subjective component of a viable Eighth Amendment conditions-of-confinement claim. As such, to the extent Plaintiff is attempting to state an Eighth Amendment conditions-of-confinement claim, it should be dismissed for failure to state a claim.

        **ii.**        **Plaintiff does not state an Eighth Amendment failure-to-train claim.**

To state an Eighth Amendment failure-to-train claim against a supervisory official, a plaintiff must allege facts demonstrating "(1) [that] the supervisor either failed to supervise or train the

6

subordinate official; (2) a causal link exists between the failure to train or supervise and the violation of the plaintiff's rights; and (3) [that] the failure to train or supervise amounts to deliberate indifference." *Estate of Davis ex rel. McCully v. City of N. Richland Hills*, 406 F.3d 375, 381 (5th Cir. 2005). Plaintiff fails to plead any of these required elements.

To satisfy the first element, a plaintiff's pleadings must identify the particular respect in which the defendant's training or supervision of his subordinates was either inadequate or deficient. *Henderson v. Harris Cnty., Texas*, 51 F.4th 125, 130 (5th Cir. 2022); *see also Anokwuru v. City of Houston*, 990 F.3d 956, 965 (5th Cir. 2021) ("[A] plaintiff must allege with specificity how a particular training program is defective.").

Here, Plaintiff offers a lone sentence in reference to Metcalf, alleging that Metcalf "[f]ailed to have all officers properly trained in all areas." ECF No. 1 at 3. Plaintiff offers nothing more than this vague and conclusory allegation. Plaintiff fails to identify any *specific* inadequacy with TDCJ's training procedures or any *specific* instance of Metcalf's failure to train his subordinates. ECF No. 1 at 3, 4. Therefore, Plaintiff's presumed failure-to-train claim must be dismissed. *See Henderson*, 51 F.4th at 130 (dismissing failure-to-train claim supported only by conclusory allegation that Harris County failed to provide its officers with any training on the constitutional use of tasers).

Plaintiff also fails to allege a causal link between Metcalf's failure to train his subordinates and a violation of his constitutional rights. With respect to Opeola, Plaintiff offers no facts indicating that the alleged cell door incident would not have occurred if the officers involved had been properly trained. Plaintiff alleges that it was Opeola's failure to adhere to policy which resulted in his injury, not Metcalf's failure-to-train Opeola. ECF No. 1 at 4.

Finally, Plaintiff fails to adequately plead deliberate indifference, which is "an extremely high standard to meet." *Domino v. TDCJ*, 239 F.3d 752, 756 (5th Cir. 2001). The Fifth Circuit has elaborated on what is required to show deliberate indifference in the failure-to-protect context:

7

> Deliberate indifference is a stringent standard of fault, requiring proof that a [state] actor disregarded a known or obvious consequence of his action. To establish that a state actor disregarded a known or obvious consequence of his actions, there must be actual or constructive notice that a particular omission in their training program causes employees to violate citizens' constitutional rights and the actor nevertheless chooses to retain that program. A pattern of similar constitutional violations by untrained employees is ordinarily necessary to demonstrate deliberate indifference, because without notice that a course of training is deficient *in a particular respect*, decisionmakers can hardly be said to have deliberately chosen a training program that will cause violations of constitutional rights. Without cabining failure -to-train claims in this manner, a standard less stringent than deliberate indifference would be employed, and a failure-to-train claim would result in de facto *respondeat superior* liability.

*Porter v. Epps*, 659 F.3d 440, 446-47 (5th Cir. 2011) (internal quotations, citations, and ellipses omitted) (emphasis added); *see also Brown v. Bryan County*, 219 F.3d 450, 459 (5th Cir. 2000) (explaining that "mere negligence in failing to train" is insufficient for liability).

Plaintiff provides no relevant facts from which the Court could infer "a pattern of similar constitutional violations by untrained employees" giving Metcalf "notice that a course of training is deficient in a particular respect." *Porter*, 659 F.3d at 446. Instead, Plaintiff simply alleges that Metcalf has failed to train all officers in all areas which is a sweeping conclusory allegation made with no merit and supported by no factual allegations. As such, to the extent Plaintiff is attempting to state an Eighth Amendment failure-to-train claim, it should be dismissed for failure to state a claim.

By failing to satisfy the first prong required to overcome Defendants' qualified immunity, Defendants' qualified immunity remains intact and the court need not evaluate the second prong. However, assuming *arguedo*, that the court holds that Plaintiff has satisfied the first element needed to overcome Defendants' entitlement to qualified immunity, Defendants are still entitled to qualified immunity because, Plaintiff also fails to overcome the second requisite prong.

   **B.    The clearly established law requires a high degree of specificity in order to overcome defendants' entitlement to qualified immunity.**

The Supreme Court re-admonished courts "not to define clearly established law at a high level of generality." *Ashcroft v. al-Kidd*, 563 U.S. 731, 742 (2011). To be clearly established, "[t]he contours

8

of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right…in the light of pre-existing law the unlawfulness must be apparent to the point that it is beyond debate whether the specific conduct is unlawful." *Id.* at 743; *Anderson v. Creighton*, 483 U.S. 635, 640 (1987).

The Fifth Circuit has reaffirmed and re-emphasized that "[the clearly established law inquiry] establishes a high bar." *Wyatt v. Fletcher*, 718 F.3d 496, 503 (5th Cir. 2013); *see also Morgan v. Swanson*, 659 F.3d 359, 378–79 (5th Cir. 2011) (en banc). When deciding whether the right allegedly violated was "clearly established," the court asks, "whether the law so clearly and unambiguously prohibited the conduct that *every* reasonable official would understand that what he is doing violates the law." *Wyatt*, 718 F.3d at 503 (emphasis in original) (citing *Morgan*, 659 F.3d at 371); *see also Pierce v. Smith*, 117 F.3d 866, 882 (5th Cir. 1997). Answering in the affirmative requires the court to be able to point to "controlling authority—or a robust consensus of persuasive authority—that defines the contours of the right in question with a high degree of particularity." *Morgan*, 659 F.3d at 371–72. When there is no controlling authority *specifically prohibiting* a defendant's conduct, the law is not clearly established for the purposes of defeating qualified immunity. *Id.* at 372. Courts must not waiver from holding to these "clearly drawn bright lines as rigorous background principles of qualified immunity." *Id.* at 371; *see also, Pittman-Bey v. Celum*, 557 F. App'x 310, 311 (5th Cir. 2014) (defining the relevant clearly established law inquiry with specificity to the inmate-plaintiff's religious claims as opposed to a more generalized inquiry regarding inmate religious rights pertaining to diet).

Courts that seek to deny qualified immunity frequently cite to *Hope v. Pelzer*, 536 U.S. 730, 739 (2002), for the proposition that the clearly established law inquiry need only provide "fair warning" that their acts *might* be unconstitutional. *See, e.g.*, *Webb v. Livingston*, 618 F. App'x 201, 208 (5th Cir. 2015); *Martone v. Livingston*, No. 4:13-cv-3369, 2014 WL 3534696, at *8 (S.D. Tex. July 16, 2014); *Mullenix*, 136 S. Ct. at 314 (Sotomayor, J., dissenting). The Fifth Circuit in *Morgan* recognized that "fair

9

warning" as used in *Hope* suggested a lower standard, appeared to be at odds with language used in subsequent rulings, and questioned whether "fair warning" was still an appropriate standard. *Morgan*, 659 F.3d at 373 (comparing "fair warning" with "squarely governed" and "beyond debate" language used in subsequent qualified immunity rulings).

The Supreme Court cases on qualified immunity clarify that the case law must contain a high level of factual specificity to be considered "fair" warning. *Mullinex*, 136 S. Ct. at 308 (emphasis in original) (internal citations omitted) ("The dispositive question is whether the violative nature of *particular* conduct is clearly established. This inquiry must be undertaken in light of the specific context of the case, not as a broad general proposition."); *Taylor*, 135 S. Ct. at 2045 (holding that the existing precedent must have placed the constitutional question "beyond debate" that the prison administrators were "overseeing a system that violated the Constitution").

## II. Failure to adhere to all aspects of standard operating procedure is not a not a constitutional violation.

Plaintiff alleges that his toe injury was caused by Opeola opening Plaintiff's cell door without having another officer assisting him. ECF No. 1 at 4. Plaintiff states that this alleged "failure to adhere to all aspects of standard operating procedures" resulted in a "dereliction of responsibility." *Id.* Plaintiff fails to identify the violated policy however, assuming *arguendo* that he had name such a policy, it would be of little importance because, [a] prison official's failure to follow the prison's own policies does not, itself, result in a constitutional violation. *See Richardson v. Thornton*, 299 Fed.Appx. 461, 462-63 (5th Cir.2008) ("The failure of the prison to follow its own policies ... is not sufficient to make out a civil rights claim."; *Sandoval v. Fox*, 135 Fed.Appx. 691, 691-92 (5th Cir.2005) ("The mere failure to comply with prison rules and regulations does not, without more, give rise to a constitutional violation.").

## CONCLUSION

For all of the foregoing reasons, Defendants respectfully request that this Court grant their Motion and dismiss all of Plaintiff's claims against them and grant all other relief to which they may be entitled.

Respectfully submitted,

**KEN PAXTON**
Attorney General of Texas

**BRENT WEBSTER**
First Assistant Attorney General

**RALPH MOLINA**
Deputy First Assistant Attorney General

**AUSTIN KINGHORN**
Deputy Attorney General for Civil Litigation

**SHANNA E. MOLINARE**
Assistant Attorney General
Chief, Law Enforcement Defense Division

*/s/ Kyle A. Perkins*
**KYLE A. PERKINS**
Assistant Attorney General
Texas State Bar No. 24144087
Kyle.perkins@oag.texas.gov

Law Enforcement Defense Division
OFFICE OF THE ATTORNEY GENERAL
P.O. Box 12548
Austin, Texas 78711-2548
Phone (512) 463-2080 | Fax (512) 370-9814

**ATTORNEYS FOR DEFENDANTS OPEOLA AND METCALF**

**NOTICE OF ELECTRONIC FILING**

I, **Kyle A. Perkins**, Assistant Attorney General of Texas, certify that I have electronically submitted for filing a true copy of the foregoing in accordance with the Electronic Case Files System of the Southern District of Texas within one business day of June 9, 2025.

*/s/ Kyle A. Perkins*
**KYLE A. PERKINS**
Assistant Attorney General

**CERTIFICATE OF SERVICE**

I, **Kyle A. Perkins**, Assistant Attorney General of Texas, certify that a true and correct copy of the foregoing Defendants' Motion to Dismiss has been served by placing same in the United States Mail, Certified Return Receipt Requested within one business day of June 10, 2025.

Dennis Blackstock TDCJ No. 1888004        *CMRRR: 70092250 0003 9938 8564*
Estelle Unit
264 FM3478
Huntsville, TX 77320
**Plaintiff, pro se**

*/s/ Kyle A. Perkins*
**KYLE A. PERKINS**
Assistant Attorney General